ERIC WALKER, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Walker v. Commissioner
Docket No. 24076-89
United States Tax Court
T.C. Memo 1991-469; 1991 Tax Ct. Memo LEXIS 518; 62 T.C.M. (CCH) 822; T.C.M. (RIA) 91469; September 25, 1991, Filed *518 Decision will be entered for the respondent. Eric Walker, pro se. Richard Ainsworth, for the respondent. BUCKLEY, Special Trial Judge. BUCKLEY
MEMORANDUM OPINION This case was heard pursuant to section 7443A(b) and Rule 180 et seq. [1]
Respondent determined a deficiency in petitioner's 1986 Federal income tax in the amount of $ 4,778.20. The sole issue for decision is whether petitioner is subject to the alternative minimum tax imposed by section 55(a) when he utilized income averaging in computing his tax. Some of the facts have been stipulated and are so found. The stipulation of facts and accompanying exhibits are incorporated herein by reference. Petitioner, who filed as a single taxpayer for 1986, resided in Monterey County, California, at the time he petitioned to this Court. A purely legal question is presented in this *519 case requiring that we construe certain alternative minimum tax provisions. The facts are not complicated, and we set them forth in laconic fashion. As a result of petitioner's sale, in 1986, of an interest in a rental property, he realized a net long-term capital gain of $ 52,410, and included 40 percent of that figure, $ 20,964, in his income. In computing his tax, petitioner elected to invoke the income averaging provisions of sections 1301 through 1307, which resulted in a reduction in the amount of his section 1 tax. Petitioner reported section 1 tax due in the amount of $ 8,288. [2] He concluded that an alternative minimum tax was not due and therefore reported none. Respondent determined that petitioner is subject to the alternative minimum tax and issued a notice of deficiency in the amount of $ 4,778.20. *520 The alternative minimum tax imposed by section 55(a) is "equal to the excess (if any) of -- (1) an amount equal to 20 percent of so much of the alternative minimum taxable income as exceeds the exemption amount, over (2) the regular tax for the taxable year." The amount calculable under section 55(a)(1) is commonly referred to as the "tentative alternative minimum tax." The parties are in agreement that petitioner's tentative alternative minimum tax for 1986 is $ 13,066. The dispute centers around the meaning of the term "regular tax" as used in section 55(a)(2). Petitioner contends that in determining whether he is subject to an alternative minimum tax, the amount of "regular tax" is computed without applying the income averaging provisions; in the case at bar the parties agree that this amount is $ 17,652. Respondent maintains that where the taxpayer elects to income average, as petitioner did here, the "regular tax" is computed after the income averaging; in this case the parties agree that this amount is $ 8,288. Petitioner's interpretation results in a greater "regular tax" amount and therefore reduces the amount, if any, by which the section 55(a)(1) amount exceeds the *521 (a)(2) amount. That is to say, it results in a reduced amount of alternative minimum tax or, as in this case, results in no alternative minimum tax. Under respondent's interpretation, an alternative minimum tax of $ 4,778 is to be imposed on petitioner ($ 13,066 - $ 8,288). Section 55(f)(2) defines the term "regular tax" as follows: The term "regular tax" means the taxes imposed by this chapter for the taxable year (computed without regard to this section and without regard to the taxes imposed by sections 47(a), 72(m)(5)(B), 72(q), 402(e), 408(f), and 667(b)) reduced by the sum of the credits allowable under subparts A, B, and D of part IV of this subchapter. For purposes of this paragraph, the amount of the credits allowable under such subpart shall be determined without regard to this section. [Emphasis supplied.]
Section 55 appears in chapter 1 of subtitle A of the Code. Chapter 1 encompasses sections 1301 through 1307 dealing with income averaging. These sections are not among the enumerated Code sections that are to be disregarded in calculating "regular tax." Consequently, a plain reading of section 55 supports respondent's view that where income averaging *522 is elected to compute the section 1 tax, it must also be utilized to compute the section 55(a)(2) "regular tax" which is used in turn to determine whether an alternative minimum tax is due. is directly on point. There the taxpayers also elected to income average, and, in determining their liability for the alternative minimum tax, they also used as their "regular tax" a higher tax figure computed under section 1 without income averaging. They too maintained they owed no alternative minimum tax. In sustaining respondent, we held the statutory framework to be clear on its face. . Nevertheless, petitioner asks us to rethink our holding in Sparrow in that, in petitioner's view, such a reading of the statute creates unjust results which could not have been intended by Congress. Petitioner argues that by enacting the income averaging provisions Congress intended to alleviate the tax burden on a taxpayer who, in a particular year, experiences an unusual increase in income. He further argues that to give literal meaning to section 55 would therefore sweep away the benefits bestowed by *523 income averaging; a result Congress could not have intended. Petitioner directs us to the opinion in , revg. , wherein the Ninth Circuit, to which this matter is appealable, stated that "a court may depart from a statute's literal language in order to avoid absurd and unintentional results." In , the statutory language under consideration by the Ninth Circuit was not the statutory language at issue here. We see no absurd or unintentional results stemming from a literal reading of section 55 and therefore disagree with petitioner. To the contrary, the interplay between section 55 (alternative minimum tax) and section 1301 et seq. (income averaging) strikes a consistent balance between the intended goals of both statutory provisions. In , affg. a Memorandum Opinion of this Court, the Ninth Circuit addressed the very argument posited by petitioner here, albeit in a slightly different context. Respondent cites Okin as support for his position while petitioner maintains that the case is *524 factually distinguishable. Like petitioner, the taxpayer in Okin experienced an unusually large increase in income because of a significant long-term capital gain. He also elected to income average on his tax return and paid no alternative minimum tax. Respondent determined that an alternative minimum tax was due. The taxpayer in Okin, however, did not dispute the method of computing the "regular tax" under section 55(a)(2), rather, he argued that the tentative minimum tax calculable under section 55(a)(1) should be income averaged, thereby creating a lower amount to compare to the "regular tax" and thus lowering or eliminating the amount of alternative minimum tax due. He argued, as does petitioner, that although contrary to the literal reading of the statute, such an approach would be consistent with the intention of Congress. We find the analysis in Okin apposite to the situation at bar inasmuch as both involve the taxpayer argument that a literal application of section 55 runs afoul of congressionally intended favorable income averaging treatment. In response to the taxpayer's contention in Okin that literal application of section 55 would nullify the tax *525 savings achieved by income averaging, the Ninth Circuit said: In this case section 55 does have that effect. But this result is not contrary to congressional intent. Although section 55 increases Okin's total tax, his capital gain deductions overall decreased his total liability under sections 1 and 55 to almost one-third of what it would otherwise have been. Thus, both congressional concerns in enacting section 55 -- tax on gains and incentive for capital formation -- are served. * * * [Fn. ref. omitted.]
. We said much the same thing in . We observe moreover that petitioner's tax savings from income averaging were not entirely nullified by the alternative minimum tax provisions. Had income averaging not been available to petitioner, his tax would have been $ 17,652. Under petitioner's method where income averaging is used to reduce the section 1 tax, but not to compute the "regular tax" for alternative minimum tax purposes, the total tax comes to $ 8,288. However, if as respondent contends, the proper method of calculation is to apply income averaging for both purposes, *526 petitioner's total tax comes to $ 13,066. Under respondent's method, which we hold to be the correct application of the statutory provisions, petitioner achieves substantial benefit from income averaging, and, at the same time, congressional concern respecting the imposition of an alternative minimum tax is also served. We adhere to our holding in Sparrow, and we decline petitioner's request that we overrule it. Decision will be entered for the respondent. Footnotes
1. Section references are to the Internal Revenue Code as amended and in effect for the year at issue; Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. Petitioner also reported self-employment tax due pursuant to section 1401 et seq. in the amount of $ 5,166. This amount is not in dispute and is not relevant to our discussion, and we therefore ignore it hereafter.↩